IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IRVIN VAN BUREN, | CASE No. 1:13-cv-00516-MJS (PC) |
| Plaintiff, | ORDER DISMISSING COMPLAINT WITH LEAVE TO AMEND |
| vs. | (ECF No. 1) |
| RALPH M. DIAZ, et al., | AMENDED COMPLAINT DUE WITHIN THIRTY DAYS |
| Defendants. | |

**SCREENING ORDER**

**I.     PROCEDURAL HISTORY**

Plaintiff Irvin Van Buren is a state prisoner proceeding pro se and in forma pauperis in this civil rights action filed on April 10, 2013 pursuant to 42 U.S.C. § 1983. (ECF No. 1.) His Complaint is now before the Court for screening.

**II.    SCREENING REQUIREMENT**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous, malicious," or that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or

any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

Section 1983 "provides a cause of action for the 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 508 (1990), quoting 42 U.S.C. § 1983. Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights conferred elsewhere. Graham v. Connor, 490 U.S. 386, 393-94 (1989).

### III.  SUMMARY OF COMPLAINT

Plaintiff alleges that he suffered food poisoning from a meal served at the California Substance Abuse and Treatment Facility - California State Prison at Corcoran ("CSP") on Easter Sunday, April 8, 2012, and was denied immediate and adequate medical treatment thereafter. (ECF No. 1 at § IV.) He specifically alleges Defendants violated the Eighth Amendment and California Constitution article 1 section 17 by subjecting him to cruel and unusual punishment and denying medical care as follows:

#### A.  Underlying Incident

Plaintiff, who was served the April 8th meal in his housing unit during lock down, became violently ill immediately upon eating Salisbury steak. He suffered great stomach and head pain, nausea, diarrhea and vomiting which got progressively worse overnight.

The following morning Plaintiff's cell mate informed medical staff of Plaintiff's illness. Plaintiff was told to fill out a health care request form, but received no assistance. Plaintiff's cell mate filled out the request form as Plaintiff was too ill. Plaintiff lost consciousness. His cell mate called an emergency and Plaintiff was rushed to the clinic, where he waited an hour in the sun to see a medical staff LVN who told him he likely had a virus and gave him Tylenol. (Inmates in Plaintiff's housing unit were on lock

down at the time making it unlikely that a virus was spread among inmates.) His request to see a doctor was denied. He was told he could see one later if needed. He was sent back to his cell and confined to quarters.

Prison officials negligently failed to follow the procedure set out at California Department of Corrections and Rehabilitation ("CDCR") Departmental Operations Manual ("DOM") § 54080.11.1, for retaining and testing the meal to see if it was tainted, and denied Plaintiff's request that they do so.

Prison officials negligently handled the food that made Plaintiff ill or allowed negligent handling by inmates not cleared to work culinary duty pursuant to the food service health and safety standards set out at Title 15 § 3052.

Approximately 20 inmates in Plaintiff's housing unit became similarly ill around the same time.

**B.   Follow-up Treatment**

Plaintiff saw a clinic doctor on April 12, 2012, who diagnosed possible food poisoning and ordered a blood test. He had a blood draw on April 18, 2012.

**C.   Grievances**

    1.   Health Care

Plaintiff filed a health care appeal on April 10, 2012 claiming inadequate medical treatment.[1] On April 16, 2012, Defendant Crum screened out this appeal because of "pointless verbiage." Plaintiff re-filed this claim on April 19, 2012.  It  was screened out on April 24, 2012 for failure to demonstrate harm.[2]

    2.   Food Service

Plaintiff filed a food service appeal on April 19, 2012 alleging shortcomings in the kitchen department.[3] This appeal was processed by Defendants Hall and Garza.

---

[1] Appeal No. SATF HC 12-054754.

[2] Appeal No. SATF HC 12-054823.

[3] Appeal No. SATF D-12-02103.

Defendant Williams, the supervising cook, interviewed Plaintiff, discounted food poisoning as a cause of Plaintiff's illness and denied the appeal at the first level. Defendant Hall denied the appeal at the second level on August 9, 2012, indicating the illness had been caused by a virus, not food. Plaintiff submitted the appeal to the third level, where it was denied on December 3, 2012.

### 3. Medical Records

Plaintiff filed a medical records appeal on July 2, 2012 seeking his records and those of other inmates who became ill around the time of Plaintiff's illness.[4] Defendant Umi rejected this appeal on July 3 2012 because the wrong appeal form was used. Plaintiff re-filed this appeal and Defendant Hermosillo rejected it on July 17, 2012 due to a lack of facts and also because Plaintiff's illness was caused by a virus not food.[5]

**D.   Defendants**

Plaintiff names as Defendants (1) Ralph M. Diaz, CSP Warden; (2) D. Williams, Supervising Correctional Cook; (3) D. Hermosillo, Health Care Appeals Coordinator; (4) M. Crum, Health Care Appeals Coordinator; (5) R. Hall, Appeal Coordinator; (6) A. Garza, Appeals Coordinator; (7) S. Umi, Appeals Coordinator.

**E.   Relief**

Plaintiff seeks compensatory and punitive damages. (ECF 1 at § V.)

**IV.   ANALYSIS**

**A.   Pleading Requirements Generally**

To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated; and, (2) that the alleged violation was committed by a person acting under the color of state law. West v. Atkins, 487 U.S. 42, 48 (1988); Ketchum v. Alameda Cnty., 811 F.2d 1243, 1245 (9th Cir. 1987).

---

[4] Appeal No. HC 12-055404.

[5] Appeal No. HC 12-055498.

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009), citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.' " Id. Facial plausibility demands more than the mere possibility that a defendant committed misconduct and, while factual allegations are accepted as true, legal conclusions are not. Id. at 1949–50.

**B.    Linkage**

    1.    Legal Standard

Pursuant to 42 U.S.C. § 1983, Plaintiff must demonstrate that each named Defendant personally participated in the deprivation of his rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). The Supreme Court has emphasized that the term "supervisory liability," loosely and commonly used by both courts and litigants alike, is a misnomer. Iqbal, 556 U.S. at 677. "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior." Id. t 676. Rather, each government official, regardless of his or her title, is only liable for his r her own misconduct, and therefore, Plaintiff must demonstrate that each defendant, through his or her own individual actions, violated Plaintiff's constitutional rights. Id. at 676–77.

    2.    Warden Diaz Not Linked

Plaintiff has not alleged any facts linking CSP Warden Diaz to a claimed wrong. Nothing suggests he participated in the alleged rights deprivation.

Plaintiff will be given an opportunity to file an amended complaint attempting to cure this deficiency. Plaintiff must allege facts showing Warden Diaz personally participated in the rights violation(s).

### C. Conditions of Confinement

#### 1. Legal Standard[6]

The Eighth Amendment protects prisoners from inhumane conditions of confinement. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006). Prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety. Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000). But "routine discomfort inherent in the prison setting" does not rise to the level of a constitutional violation. Id. Rather, extreme deprivations are required to make out a conditions of confinement claim, and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation. Farmer v. Brennan, 511 U.S. 825, 834 (1994); Hudson v. McMillian, 503 U.S. 1, 9 (1992). In order to state a claim, the plaintiff must allege facts sufficient to support a claim that prison officials knew of and disregarded a substantial risk of serious harm. E.g., Farmer, 511 U.S. at 847; Thomas v. Ponder, 611 F.3d 1144, 1150-51 (9th Cir. 2010); Richardson v. Runnels, 594 F.3d 666, 672 (9th Cir. 2010).

"Deliberate indifference is a high legal standard." Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004). "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.' " Id. at 1057, quoting Farmer, 511 U.S. at 837. "If a prison official should have been aware of the risk,

---

[6] Plaintiff's cruel and unusual punishments claim is properly analyzed under the Eighth Amendment of the U.S. Constitution. See Giraldo v. California Dep't of Corr. and Rehab., 168 Cal.App.4th 231, 253–57 (Cal.Ct.App. 2008), citing Katzberg v. Regents of the University of California, 29 Cal.4th 300, 329 (2002) (there is no private cause of action for damages for violation of the cruel and unusual punishments clause of the California Constitution at article 1, section 17); Los Angeles County Bar Assoc. v. Eu, 979 F.2d 697, 705 (9th Cir. 1992), citing Payne v. Superior Court, 17 Cal.3d 908, 914 at n.3 (Cal.1976) (the discussion of plaintiff's federal constitutional claim resolves both the federal and state constitutional claim).

-6-

but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk." Id., quoting Gibson v. County of Washoe, Nevada, 290 F.3d 1175, 1188 (9th Cir. 2002). The prison official must "know [ ] of and disregard [ ] an excessive risk to inmate health or safety . . . ." Farmer, 511 U.S. at 837.

### 2. Unnamed Individuals

Plaintiff does not name the individual(s) responsible for his alleged food poisoning. He may not proceed against unnamed prison officials other than by amending to name "Doe" defendants and then specifying which Doe defendant did what wrongful acts.

### 3. No Substantial Risk of Serious Harm

Plaintiff expressly alleges negligence by prison officials. However, negligence alone is not sufficient to state a federal violation. Farmer, 511 U.S. at 835. Plaintiff does not allege facts suggesting the April 8th meal posed a severe risk to his health and safety.

Food prepared under conditions so unsanitary as to make it unwholesome and a threat to heath can constitute cruel and unusual punishment. Adams v. Kincheloe, 743 F.Supp. 1393, 1397 (E.D. Wash. 1990). Plaintiff does suggest generally that CSP inmates who do not meet Title 15 food service health and safety requirements are allowed to handle and prepare food. But he does not show that such a practice constitutes an immediate threat to health and safety or that its caused the alleged April 8th meal problems. He also fails to link any named Defendant to such a practice.

### 4. No Deliberate Indifference to Risk

Even if such a severe risk from mishandling food were alleged, Plaintiff fails to show any named Defendant was aware of the risk and had an opportunity to reasonably respond to it and failed to so respond. Nothing suggests any named Defendant was aware of any problem with the April 8th meal when it was being served. A single instance of serving contaminated food, even if it causes inmate illness, is not sufficient to show cruel and unusual punishment. Islam v. Jackson, 782 F.Supp. 1111,

1114 (E.D. Va. 1992).

Plaintiff alleges that food service in the housing unit during lock down falls short of Title 15 health and safety requirements. However, temporary service of food under unsanitary conditions not presenting an immediate threat to health and well-being is not sufficient to show cruel and unusual punishment. Id.

Plaintiff's claim of Title 15 health and safety shortcomings is not linked to a named Defendant or to the April 8th meal problems and does not suggest any immediate threat to his health and safety.

If Plaintiff decides to amend he must allege facts suggesting named Defendants not only knew his April 8th meal posed a substantial risk of serious harm, but also chose not to reasonably respond to the risk. See Farmer, 511 U.S. at 834; Delaney v. DeTella, 256 F.3d 679, 683 (7th Cir. 2001).

### D. Medical Indifference

#### 1. Legal Standard

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.' " Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006), quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976). This requires (1) " 'a serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,' " and, (2) "the defendant's response to the need was deliberately indifferent." Jett, 439 F.3d at 1096, quoting McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds, WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997).

Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980), citing Estelle, 429 U.S. at 105–06. Even gross negligence is insufficient to establish deliberate indifference to serious medical needs. See Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990).

### 2. Unnamed Individuals

Plaintiff fails to name the individuals who allegedly were indifferent to his medical needs. He may not proceed against unnamed prison officials other than by naming "Doe" defendants.

### 3. Serious Condition

Plaintiff's violent and progressive illness including great pain, nausea, diahhrea and vomiting does state a serious medical condition.

### 4. No Deliberate Indifference to Serious Condition

Plaintiff's allegation that medical staff making rounds in his housing unit, upon being advised of his condition, failed to provide assistance and thereby precipitated his later lapse into unconsciousness may suggest deliberate indifference. Deliberate indifference is shown by "a purposeful act or failure to respond to a prisoner's pain or possible medical need, and harm caused by the indifference." Jett, 439 F.3d at 1096, citing McGuckin, 974 F.2d at 1060. It appears Plaintiff's cell mate told medical staff that Plaintiff was "extremely ill and need[s] to see a doctor" and that staff, rather than providing or seeking assistance, gave Plaintiff a form to fill out. (ECF No. 1, App. A. at 86.)

However, Plaintiff must allege harm resulting from the alleged indifference. It remains unclear how long treatment was delayed and how the delay may have harmed Plaintiff, if at all. See McGuckin, 974 F.2d at 1060, citing Shapley v. Nevada Board of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985) (the delay must have led to further harm in order to claim deliberate indifference).

Once Plaintiff was transported to the clinic, it appears he was evaluated and received treatment. The facts that he may have waited an hour in the sun to see clinic staff and that his request to see a doctor was denied do not alone suggest intentional indifference and resulting harm. See Toussaint v. McCarthy, 801 F.2d 1080, 1111-12 (9th Cir. 1986), overruled in part on other grounds, Sandin v. Connor, 515 U.S. 472 (1995) (delays necessitated by an evaluation process, generally fail to state a

cognizable claim). He received a preliminary diagnosis and medication from the clinic LVN and was told he could see a doctor later if needed.

If Plaintiff decides to amend he must allege facts showing, in addition to his serious medical condition, an intentionally indifferent response to that condition by named defendants.

### E.	Grievance Process

#### 1.	No Due Process Right to Grievance Process

Prison staff actions in responding to Plaintiff's prison appeals and grievances alone can not give rise to any claim for relief under § 1983 for violation of due process. "[A prison] grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates." Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993), citing Azeez v. DeRobertis, 568 F.Supp. 8, 10 (D.C. Ill.1982); see also Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (no liberty interest in processing of appeals because no entitlement to a specific grievance procedure). Plaintiff does not have a claim of entitlement to a grievance procedure. Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988). Thus Plaintiff can not claim that Defendants Williams, Hermosillo, Crum, Hall, Garza and Umi improperly handled his grievances in violation of his federal due process rights. Leave to amend would be futile and is denied.

#### 2.	No Individual Right to Enforce Prison Regulations and DOM

The existence of Title 15 regulations and DOM provisions governing the conduct of prison officials does not necessarily entitle an inmate to sue civilly for their violation. The Court has found no authority to support a finding of an implied private right of action under Title 15 and the DOM, and Plaintiff has provided none. There are several district court decisions holding that there is no such right. E.g., Vasquez v. Tate, 2012 WL 6738167, at *9 (E. D. Cal. Dec. 28, 2012); Davis v. Powell, __ F.Supp.2d __, __, 2012 WL 4754688, at *9 (S.D. Cal. Oct. 4, 2012).

Accordingly, even if Plaintiff could show a violation of prison regulations and the DOM, he has no right to state a claim for such violation. See Chappell v. Perrez, 2011

WL 2296816, *2 (E.D. Cal. June 8, 2011); Lamon v. Cate, 2011 WL 773046, *9 (E.D. Cal. February 28, 2011).

Since no such private right exists, leave to amend this claim would be futile and will be denied.

## V.   CONCLUSIONS AND ORDER

Plaintiff's Complaint does not state a claim for relief under § 1983. The Court will grant Plaintiff an opportunity to file an amended complaint consistent with the foregoing. Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000); Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987).

If Plaintiff opts to amend, he must demonstrate that the alleged acts resulted in a deprivation of his constitutional rights. Iqbal, 129 S.Ct. at 1948–49. Plaintiff must set forth "sufficient factual matter . . . to 'state a claim that is plausible on its face.' " Id. at 1949, quoting Twombly, 550 U.S. at 555. Plaintiff must also demonstrate that each named Defendant personally participated in a deprivation of his rights. Jones, 297 F.3d at 934.

Plaintiff should note that although he has been given the opportunity to amend, it is not for the purposes of adding new claims. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007). Plaintiff should carefully read this Screening Order and focus his efforts on curing the deficiencies set forth above.

Finally, Plaintiff is advised that Local Rule 220 requires that an amended complaint be complete in itself without reference to any prior pleading. As a general rule, an amended complaint supersedes the original complaint. See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967). Once an amended complaint is filed, the original complaint no longer serves any function in the case. Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged. The amended complaint should be clearly and boldly titled "First Amended Complaint", refer to the appropriate case number, and be an original signed under penalty of perjury. Plaintiff's amended complaint should be brief. Fed. R. Civ. P.

8(a). Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . . ." Twombly, 550 U.S. at 555.

Based on the foregoing, it is **HEREBY ORDERED** that:

1. The Clerk's Office shall send Plaintiff (1) a blank civil rights amended complaint form and (2) a copy of his Complaint filed April 10, 2013;
2. Plaintiff's Complaint is dismissed for failure to state a claim upon which relief may be granted;
3. Plaintiff shall file an amended complaint within thirty (30) days from service of this Order; and
4. If Plaintiff fails to file an amended complaint in compliance with this Order, this action will be dismissed, with prejudice, for failure to state a claim and failure to prosecute, subject to the "three strikes" provision set forth in 28 U.S.C. § 1915(g). Silva v. Di Vittorio 658 F.3d 1090 (9th Cir. 2011).

IT IS SO ORDERED.

Dated:   May 23, 2013          /s/ *Michael J. Seng*
                               UNITED STATES MAGISTRATE JUDGE